**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FHC HOLDINGS CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-13076 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: September 23, 2026 at 9:00 a.m. (ET)**<br>**Obj. Deadline: August 28, 2026 at 4:00 p.m. (ET)** |

**PLAN ADMINISTRATORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING A STIPULATION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND (II) GRANTING RELATED RELIEF**

Anthony M. Saccullo, solely in his capacity as the Plan Administrator of FHC Holdings Corporation (f/k/a Francesca's Holdings Corporation), *et al.* (the "Plan Administrator"), appointed pursuant to the *Debtors' First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation* filed on May 25, 2021 [Docket No. 737] (the "Plan"), which was confirmed by the Order of this Court on July 20, 2021 [Docket No. 988], hereby submits this motion (the "Motion") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), seeking relief under section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the proposed compromise and stipulation by and between the Plan Administrator and various claimants alleging violations under certain wage and hour laws (the "Claimants", and together with the Plan Administrator, the "Parties") attached hereto as **Exhibit 1** to the Proposed Order (the "Settlement").[2] In support of the Motion, the Plan Administrator respectfully states as follows:

[1] The legacy Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are FHC Holdings Corporation (f/k/a Francesca's Holdings Corporation) (4704), FHC LLC (f/k/a Francesca's LLC) (2500), FHC Collections, Inc. (Francesca's Collections, Inc.) (4665), and FHC Services Corporation (f/k/a Francesca's Services Corporation) (5988). The address for correspondence related to the Debtors is c/o Saccullo Business Consulting, LLC, 27 Crimson King Drive, Bear, DE 19701.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Settlement, as applicable.

## PRELIMINARY STATEMENT

1. On July 20, 2021 (the "Confirmation Date"), this Court confirmed the Debtors' Plan following the liquidation of the Debtors' assets pursuant to a Court-approved sale process. As of the Confirmation Date, the Claimants, former employees of the Debtors, timely filed approximately 2,100 proofs of claim, including certain class proofs of claim, related to certain prepetition class action litigation (the "Litigation") commenced against the Debtors (collectively, the "Proofs of Claim"). The Litigation arises from Debtors' alleged prepetition violations of federal and state law caused by the Debtors' purported failure to pay statutorily required overtime compensation to non-exempt employees entitled to such overtime pay under applicable law.

2. The Proofs of Claim assert significant damages against the Debtors' estates and their successful resolution is one of the few remaining issues in these Chapter 11 Cases. The Proofs of Claim collectively assert (i) administrative expense claims asserting damages in unliquidated amounts, (ii) priority unsecured claims asserting damages in unliquidated amounts, and (iii) general unsecured claims asserting over $250,217,000.00 in aggregate damages.[3] Resolution of the Proofs of Claim is one of the last material tasks necessary for the Plan Administrator to wind-down these Chapter 11 Cases, make a final distribution to holders of Allowed Claims, and close these cases.

3. Recently, the Plan Administrator engaged Claimant's counsel in good-faith negotiations regarding the consensual resolution of the Proofs of Claim and reached a comprehensive settlement (the "Settlement"). As outlined in greater detail herein, the Settlement provides, *inter alia*, the following:

- Consolidation of all Proofs of Claim (as defined in the Settlement) into a single claim, which shall be allowed as a general unsecured claim in the amount of $8,000,000.00 (the "Liquidated Claim");

[3] This amount excludes duplicate claims.

- Appointment of a settlement administrator (the "Settlement Administrator"), chosen by Claimant Counsel (as defined in the Settlement), to collect and remit applicable taxes to appropriate jurisdictions and facilitate distributions to Claimants (as defined in the Settlement); and
- *Pro rata* distributions from the Debtors' estates on account of the Liquidated Claim, concurrently with distributions to all other Holders of Allowed General Unsecured Claims (each as defined in the Plan), to a settlement fund established by the Settlement Administrator, to be distributed in accordance with the procedures contained in the Settlement.

4. The Plan Administrator submits the terms of the Settlement are reasonable and should be approved by this Court. Absent approval of the Settlement, the Plan Administrator would be forced to engage in complex, time-consuming, and expensive discovery and multi-phased litigation on several issues related to the Proofs of Claim. Approval of the Settlement will allow the estates to avoid the cost and expense of uncertain litigation, facilitate the remainder of the Debtors' wind-down, and enable the Plan Administrator to close these Chapter 11 Cases.

5. For the foregoing reasons, the Plan Administrator respectfully requests that the Court grant this Motion and approve the proposed Settlement.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

### I. THE WAGE AND HOUR ACTIONS

9. On January 27, 2017, certain Claimants commenced an action captioned *Prulello, et al. v. Francesca's Holdings Corp., et al.* in the United States District Court for the District of New Jersey under Case No. 17 Civ. 565 (the "Prulello Action"). The Prulello Action plaintiffs assert that the Debtors violated the rights of certain Claimants under certain wage and hour laws, including the Fair Labor Standards Act ("FLSA") and Illinois, New Jersey, Pennsylvania, Ohio, and New York law.

10. On June 14, 2019, certain Claimants commenced an action captioned *Cox, et al. v. Francesca's Holdings Corp., et al.* in the United States District Court for the Southern District of Texas under Case No. 19 Civ. 2167 (the "Cox Action," and together with the Prulello Action, the "Wage and Hour Actions").[4] The Cox Action plaintiffs assert that the Debtors violated the rights of certain Claimants under certain wage and hour laws, including the FLSA and Maryland law.

11. The Debtors denied the allegations in the Wage and Hour Actions and asserted they were not liable in respect of the Wage and Hour Actions or the claims asserted therein. Specifically, the Debtors denied that they, their employees, or their agents committed any unlawful, tortious or improper acts against the Claimants at any time. They also disputed, among other matters, the number of hours the Claimants claim they worked, whether the Claimants are due additional compensation under the FLSA or any other wage and hour law, and, if so, the amount.

[4] The Cox Action was transferred to the United States District Court for the District of New Jersey on November 30, 2020. Cox Docket No. 63.

## II. THE BANKRUPTCY CASES

12. On December 3, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned cases (the "Chapter 11 Cases").

13. On February 17, 2021, the Court entered the *Order (I) Establishing Deadlines and Procedures for Filing Proofs of Claim and Request for Payment of Postpetition Administrative Claims; (II) Approving the Form and Manner of Notices Thereof; and (III) Granting Related Relief* [Docket No. 471], which established, *inter alia*, March 25, 2021, as the deadline for all persons and entities, other than governmental units, to file prepetition proofs of claim against the Debtors' estates (the "General Bar Date").

14. On July 20, 2021, the Court entered the Confirmation Order, which confirmed the Plan. The Plan established August 30, 2021 as the deadline for creditors to file administrative expense claims against the Debtors' estates (the "Final Administrative Claims Bar Date," and together with the General Bar Date, the "Bar Dates"). The effective date of the Plan occurred on July 30, 2021 [Docket No. 1017] (the "Effective Date").

15. The Claimants, either on their own behalf, by and through their own independent counsel, or by and through Claimant Counsel, filed the Proofs of Claim prior to the Bar Dates.

16. The Proofs of Claim, excluding duplicate claims, collectively assert damages entitled to administrative priority under section 503(b)(1) of the Bankruptcy Code in an unliquidated amount,[5] priority unsecured treatment under section 507(a)(4) of the Bankruptcy

[5] A total of 952 Proofs of Claim asserting entitlement to administrative priority status under section 503(b)(1) of the Bankruptcy Code were filed prior to the Bar Dates.

Code in an unliquidated amount,[6] and damages entitled to general unsecured treatment in an aggregate amount of no less than $250,217,000.00 (the "GUC Claims").

17. On the Effective Date, Anthony M. Saccullo was appointed the Plan Administrator and became the sole representative of the Debtors' estates. Among other things, the Plan Administrator is authorized to, *inter alia*, review, settle, and compromise disputes regarding claims filed against the Debtors' estates and facilitating distributions to creditors pursuant to Articles XI.E and XI.M of the Plan.[7]

## III. SUMMARY OF THE SETTLEMENT TERMS

18. The Parties have reached an agreement on a resolution regarding the Wage and Hour Actions and the Proofs of Claim, subject to the Court's approval. The Debtors, the Plan Administrator, and the Claimants have further agreed on an allocation of the proceeds, as discussed herein.

19. The Settlement includes the following principal terms:[8]

- The Proofs of Claim shall be consolidated and assigned a new proof of claim number 9000, which shall have a claim amount of $8,000,000.00 and shall be allowed as a general unsecured claim (the "Liquidated Claim").

- The Plan Administrator shall make distributions, *pro rata* and concurrently with distributions to all other Holders of Allowed General Unsecured Claims, to the Settlement Administrator, for deposit in a qualified settlement fund established by the Settlement Administrator within the meaning of Treasury Regulation § 1.468B-1 *et seq*., in full and final satisfaction of the Liquidated Claim.

- The proceeds of the Liquidated Claim shall be divided by the Settlement Administrator into fees, expenses, and net proceeds (being the difference between gross proceeds and fees and expenses), which sums shall be allocated as follows:

---

[6] A total of 948 Proofs of Claim asserting entitlement to priority unsecured status under section 507(a)(4) of the Bankruptcy Code prior to the Bar Dates.

[7] The Plan provides that the Plan Administrator may settle any Causes of Action (as defined in the Plan) without the consent or approval of any third party, including the Bankruptcy Court. Notwithstanding the foregoing, the Plan Administrator files this Motion under Bankruptcy Rule 9019 and seeks approval from this Court for purposes of transparency with this Court and the Debtors' stakeholders.

[8] To the extent of any conflict between this summary and the Settlement, the terms of the Settlement shall govern.

- $50,000.00 for the fees and expenses of the Settlement Administrator;
- One-third of the total gross cash amount received in the aggregate to Claimant Counsel as legal fees;
- $75,000.00 plus 7.5% of the total gross cash amount received in excess of $500,000.00 to Dundon Advisers LLC as bankruptcy financial and strategic advisers to Claimant Counsel and the Lead Plaintiffs;
- Reimbursement of reasonable and documented expenses of Claimant Counsel as set forth in **Exhibit A** of the Settlement;
- $10,000.00 to each of the Lead Plaintiffs as service awards;
- All costs and expenses associated with tax reporting requirements under applicable federal, state, and local law, including payment of applicable taxes to the appropriate taxing authorities.

- The Settlement Administrator shall distribute the proceeds of the Liquidated Claim less each of the amounts set forth above, less W-2 tax withholdings, to each Claimant *pro rata* to the calculated share of the GUC Claim of each Claimant on their respective Proof of Claim.

## RELIEF REQUESTED

20. By this Motion, the Debtors seek approval of the Settlement attached as **Exhibit 1** to the Proposed Order pursuant to Bankruptcy Rule 9019(a).

## BASIS FOR RELIEF

### I. THE PROPOSED SETTLEMENT IS IN THE BEST INTEREST OF THE DEBTORS' ESTATES AND SHOULD BE APPROVED

21. Bankruptcy Rule 9019(a) provides, in relevant part, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). A court should approve a compromise where it "is fair, reasonable, and in the interest of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

22. When considering the best interest of the estate, a court must "balance the value of

the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin*, 91 F.3d at 393. In striking this balance, the court should consider the: (1) probability of success in litigation; (2) likely difficulties in collection of any judgment;[9] (3) complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and (4) paramount interest of creditors. *Id.*; *see also Managed Storage Int'l, Inc.*, 601 B.R. 261, 265-66 (Bankr. D. Del. 2019).

23. A "court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities." *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (internal citations and quotations omitted). A court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g., Martin*, 91 F.3d at 395.

24. Applying the foregoing standards to the present case, the Plan Administrator has concluded, in the proper exercise of his business judgment, that the resolution embodied in the Settlement is fair, reasonable, and in the best interest of the Debtors and their estates and creditors. The Settlement also satisfies the *Martin* factors set forth above.

25. Absent approval of the Settlement, the outcome of any litigation of the issues raised in Wage and Hour Actions is uncertain. As of the Bar Dates, approximately 2,100 Proofs of Claim related to the Wage and Hour Actions were filed in these bankruptcy cases. If class certification is denied, which is consistent with the Plan Administrator's position, the Parties must nonetheless litigate the individual merits for each of the 2,100 Proofs of Claim. On the other hand, if this Court approves certification of any the putative classes, the Debtors' estates would be exposed to a

[9] The second *Martin* factor focuses on the debtor's ability to collect from the settlement counterparty, not the settlement counterparty's ability to collect from the debtor. *See, e.g., Kopelman & Kopelman, LLP v. O'Grady (In re O'Grady)*, 2022 U.S. Dist. LEXIS 65721, at *14 (D.N.J. Apr. 8, 2022). Accordingly, this factor is inapplicable to this Motion.

presently unknown universe of potential damages, which could materially reduce eventual recoveries for general unsecured creditors. Either scenario would result in protracted, expensive discovery and litigation of the merits of the Wage and Hour Actions, including whether the Debtors committed any "willful" violations as required for application of a three-year statute of limitations on claims arising under the FLSA. Although the Plan Administrator believes that the Debtors' estates have viable defenses, the Wage and Hour Actions present complex issues of law and fact, and the outcome of any litigation is uncertain.

26. Additionally, litigating the issues raised in the Wage and Hour Actions would be costly and time-consuming. As noted above, absent approval of the Settlement, the Parties would have to engage in protracted discovery on issues related to class certification and the underlying merits of the Wage and Hour Actions. Given the allegations in the Wage and Hour Actions, the Parties would have to exchange and review voluminous additional documents related to the Debtors' operations and personnel and payment records of thousands of the Debtors' former employees. The Parties would also have to depose a substantial number of the Debtors' former employees and executives, and engage in multi-phased litigation of several complex issues of law and fact, including: (i) the applicability of Bankruptcy Rule 7023 and certification of classes of claimants under Rule 23 of the Federal Rules of Civil Procedure; (ii) certification of collective actions under the FLSA; (iii) the merits of the Wage and Hour Actions, whether collectively as a class action and/or certified collective or on an individual basis for all 2,100 Proofs of Claim filed in these bankruptcy cases; and (iv) potential appeals of each of the foregoing. In sum, litigation of the Wage and Hour Actions would come at considerable time and expense to the Debtors' estates, expose the Debtors to indeterminate damages and delay, materially reduce distributions to general unsecured creditors, and consume substantial judicial resources of this Court.

27. In sum, approval of the Settlement Agreement is in the best interests of all parties.

The Settlement Agreement (i) is fair and equitable; (ii) obviates the expense, delay, inconvenience, and uncertainty that would attend any litigation of the parties' issues; and (iii) advances the paramount interests of all creditors. Upon approval of the Settlement, the Plan Administrator can focus his efforts on completing his reconciliation of the claims register, making distributions to other Holders of Allowed General Unsecured Claims, completing the Debtors' wind-down, and closing the bankruptcy cases.

28. For all of the foregoing reasons, the Plan Administrator respectfully requests the Court approve the proposed Settlement, which represents a reasonable compromise of the claims presented by the Claimants in the Wage and Hour Actions.

## RESERVATION OF RIGHTS

29. Nothing contained in this Motion is intended or should be construed as: (i) an admission as to the validity of any claim against the Debtors, or (ii) a waiver or limitation of the Debtors' or the Claimants' rights under the Bankruptcy Code or any other applicable law.

## NOTICE

30. The Plan Administrator will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware, (b) the Claimants by and through Claimant Counsel, (c) the jurisdictions where the Debtors may owe any payroll or similar tax; and (d) any other party requesting notice pursuant to Bankruptcy Rule 2002. The Plan Administrator respectfully submits that such notice is sufficient under the circumstances.

## NO PRIOR REQUESTS

31. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Left Intentionally Blank]*

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter the Proposed Order approving the Settlement and granting such other and further relief as is appropriate under the circumstances.

Dated: August 7, 2026
Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ Stacy L. Newman*
Justin R. Alberto, Esq. (No. 5126)
Stacy L. Newman, Esq. (No. 5044)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
jalberto@coleschotz.com
snewman@coleschotz.com

- and –

Seth Van Aalten, Esq. (Admitted *Pro Hac Vice*)
Sarah A. Carnes, Esq. (Admitted *Pro Hac Vice*)
1325 Avenue of the Americas
19th Floor
New York, NY 10019
Telephone: 212-752-8000
Facsimile: 212-752-8393
svanaalten@coleschotz.com
scarnes@coleschotz.com

*Counsel to Anthony M. Saccullo, solely in his capacity as the Plan Administrator of FHC Holdings Corporation (f/k/a Francesca's Holdings Corporation), et al.*